## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES OWENS,

                **Plaintiff,**

vs.

RANDY DAVIS, CHARLES
DINTLEMAN, MARY DOLCE, LINDA
FRITTS, MARK HARTMAN, DONNA
HEIDEMANN, MARC HODGES, TONY
KITTLE, R. LUTZZ, KATHY
MUSGRAVE, BRENDA PAULSMEYER,
WAYNE ROBKE,
JOHN EVANS, and HARRIS

                **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.   13-cv-594-MJR-SCW

### MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James Owens is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois.   Pursuant to 42 U.S.C. § 1983, he has sued several individuals for violations of his right to access the courts, retaliation and conspiracy.   Specifically, Plaintiff alleged that Defendants violated his right to court access by giving him limited or no access to his legal boxes, giving him limited access to the law library and legal supplies, and interfering with his legal mail.   Plaintiff also alleges that these actions were done in retaliation and as a conspiracy against him.   Plaintiff also challenges the constitutionality of two parts of the Illinois code, which he says block him from sending certain mail to sheriff's departments without advance funds in his prison account.

This matter is before the Court on the motion for summary judgment filed by

Defendants Davis, Dintleman, Dolce, Fritts, Hartman, Heidemann, Hodges, Kittle, Lutz, Musgrave, Paulmeyer, and Robke (Docs. 139 and 140)—Defendant Evans' separate motion for summary judgment will be dealt with in another order. (For ease of reference, the Court will refer to the moving defendants as "Defendants" throughout this order.) Plaintiff has filed a response to the motion (Doc. 144). Based on the following, the Court **GRANTS** Defendants' motion for summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his complaint on June 21, 2013, alleging that Defendants violated his right to access the courts, as well as retaliated and conspired against him in denying him access to the courts. Plaintiff also challenged the constitutionality of 20 Illinois Administrative Code § 525.110(h) and § 525.130(a)—he claims that these statutes do not allow him to send certain mail on a credit basis to sheriff's departments, thereby violating his due process rights. As narrowed by the Court's threshold order, Plaintiff's complaint alleged that Defendants at Hill, Big Muddy, Pinckneyville, and Lawrence denied him access to the courts by denying him access to his legal boxes, the law library, legal supplies, and by interfering with his legal mail. The complaint also alleged that these actions were taken out of retaliation and in a conspiracy against Plaintiff.

After Plaintiff submitted his complaint, several defendants moved to dismiss, arguing that Plaintiff's claims for events which occurred at Hill and Big Muddy Correctional Center were barred by the statute of limitations. After a review of the complaint and the grievances, the Court granted the majority of the motion to dismiss,

leaving only one claim against Defendant Wayne Robke for actions at Hill Correctional Center and one claim against Defendant John Evans (who did not join in the motion to dismiss) for actions at Big Muddy Correctional Center.   Specifically, the claim from Hill that survived the motion to dismiss was a claim that Plaintiff was not given access to his legal boxes and was forbidden from sending privileged documents without funds (Doc. 108, p. 3 and 5).   The claim from Big Muddy which survived involved the denial of Plaintiff being allowed to send out summonses due to a lack of funds (Doc. 108, p. 5).

Plaintiff's claims involving actions at Pinckneyville and Lawrence also survived. The claims at Pinckneyville which are pending relate to Plaintiff's allegation that he was given access to the law library only once in eight months (Doc. 10, p. 5); Plaintiff's allegation that he was given limited access to his excess legal boxes (*Id.*); and Defendant Dintleman's policy limiting monthly distribution of legal supplies to two envelopes, ten sheets of paper, and one pen (*Id.*).   Plaintiff alleges that these actions led a separate court to reject Plaintiff's brief.   At Lawrence, Plaintiff alleged that he was allowed only one library visit in three months and only eight hours total library time in five months (Doc. 10, p. 6).   He also alleged that Defendant Musgrave denied Plaintiff access to the library even though he had a pending briefing deadline (*Id.*).   Plaintiff also did not have access to his excess legal boxes from December 2012 to May 2013.

On June 18, 2015, Defendants moved for summary judgment on all of Plaintiff's claims (Doc. 139), and the following facts are relevant to that motion.

The allegations which make up Plaintiff's claims took place while Plaintiff was

housed at Hill, Big Muddy, Pinckneyville, and Lawrence Correctional Centers.   While he was at Hill, Plaintiff indicated that Defendant Robke, who was responsible for distributing payments from inmate trust funds, refused to send payments to the courts for Plaintiff and refused to distribute money so that Plaintiff could send his complaint to the sheriff's department for service on defendants in a state case (Doc. 140-1, p. 2). Those complaints were ultimately dismissed for lack of prosecution (Doc. 140-1, p. 4). Plaintiff testified that Hill refused to send Plaintiff's complaint in the state case to the sheriff's office so that the sheriff could serve the defendants in that case (Doc. 140-1, p. 4). Plaintiff was informed by the state court that he would have to serve the summons by sending the summons to the sheriff's office (*Id.*).   Plaintiff filled out the money voucher for the summons and attempted to send them to the sheriff's department but they were sent back to him with a note stating that the items were not legal mail and would not be sent (*Id.*).   Plaintiff had no other way of serving the summons (*Id.*).

Plaintiff also claims that he was denied access to the courts because Hill would not pay his filing fees.   Plaintiff testified that he filed a motion for injunctive relief in Sangamon County on June 10, 2008 and he was denied *in forma pauperis* status and ordered to pay $193 in filing fees (Doc. 140-1, p. 6, 7; Doc. 144-1, p. 17-26, 33-34). Although Plaintiff sent a money voucher for the filing fee to be taken out of his trust fund account, he was refused because he had no money in his account (Doc. 140-1, p. 6, 7).   In fact, Defendants point out that Plaintiff's funds were -$1803.06 as of May 27, 2015 (Doc. 140-1, p. 7; 140-1, p. 15-20).   Plaintiff had numerous funds going out of his account

for library fees, legal postage, and copies, leaving his account in the negative (*Id*.). Sangamon County refused to file his case without the filing fee and since Plaintiff was denied the funds from his account, Plaintiff believes he was denied access to the courts (Doc. 140-1, p. 6).   IDOC refused to advance Plaintiff any money for the filing fees (*Id*.).

Plaintiff filed another case in Knox County, this one involving a motion for injunctive relief to force IDOC to submit his summons to the sheriff's office (Doc. 140-1, p. 7; 144-1, p. 39-45).[1]   He was granted *in forma pauperis* status in that case and assessed an initial filing fee of $4.23 (Doc. 140-1, p. 7; 144-1, p. 47).[2]   Again, Plaintiff requested that the money be taken from his trust fund account and he was told that he had insufficient funds and the mail room told him that the funds would not be paid (Doc. 140-1, p. 7).   He also asked that the clerk's office send the summons to the sheriff's department for him and he was informed that it was his responsibility to serve the summons (*Id*.).   Plaintiff testified that he received a state stipend of $10.00 every month but those funds were deducted from his pending overage in his trust fund account and would not go towards his state court filing fees (*Id*. at p. 8).

Plaintiff testified that he contacted Robke about his issues with his mail.   He sent him a request as well as copies of the mail and vouchers showing that the mailroom

---

[1] The complaint for injunctive relief that Plaintiff sent to Knox County is attached to his responsive brief (Doc. 144-1, p. 39-45).   The Complaint indicates that Plaintiff was trying to send mail related to a § 1983 case to individual Defendants and that IDOC refused to send the mail as the defendants did not fall under the definition of legal mail (*Id*.).

[2] The order from Knox County indicates that the case would not be filed until Plaintiff paid an initial filing fee of $4.78 (Doc. 144-1, p. 46).

refused to send the summons, but Robke refused to send the mail (*Id.* at pp. 4-5).

While at Big Muddy, Plaintiff testified that he had the same problem with a case he filed in Jefferson County (Doc. 140-1, p. 8).   He was granted *in forma pauperis* status with Jefferson County but the clerk's office refused to send the summons to the sheriff's department, instead telling Plaintiff that it was his responsibility.   Plaintiff informed the clerk's office of the administrative rule which prevented mail to the sheriff's department from being labeled legal mail, but the County never ruled on his motion (*Id.* at p. 8). Plaintiff tried to appeal but was directed to pay $60.00 in appellate fees; he didn't have the money and Big Muddy wouldn't advance it, so the state appeal went nowhere (*Id.*). Plaintiff testified that the code which prohibited Plaintiff from sending out mail to the sheriff's department constituted a conspiracy amongst Defendants (Doc. 140-1, p. 9).

Mary Dolce was a grievance officer at Pinckneyville who allegedly refused to remedy Plaintiff's issues when he informed her of them through the grievance process. Similarly, Linda Fritts, Mark Hartman, and Robert Lutz were counselors at Pinckneyville who allegedly failed to remedy Plaintiff's issues when told of them. (Doc. 140-1, p. 3).   Likewise, Tony Kittle was a counselor at Lawrence who allegedly refused to remedy Plaintiff's situation (Doc. 140-1, p. 3).   Marc Hodges was the warden at Lawrence and Plaintiff alleges that he did not respond to grievances (Doc. 140-1, p. 3). Plaintiff testified that the communications between the ARB and the institutions as to the grievances shows that there was retaliation and a conspiracy because all of the Defendants agreed not to give Plaintiff the relief he sought (Doc. 140-1, p. 9).

Donna Heidemann was a law librarian at Pinckneyville who purportedly denied Plaintiff access to the law library and his excess legal boxes (Doc. 140-1, p. 3). Kathy Musgrave was also a law librarian who worked at Lawrence when Plaintiff's excess legal boxes were lost. As to the law librarians, Plaintiff testified that he would have frequent meetings with them about not receiving enough time in the law library or about his access to his excess legal boxes (Doc. 140-1, p. 5). Plaintiff testified that the librarians refused to do anything about his lack of access (*Id*.). Plaintiff testified that while at Pinckneyville, Defendant Dintleman, an assistant warden, wrote a memo allowing indigent inmates only two envelopes, ten sheets of paper, and a pen a month, but Plaintiff indicated that two envelopes was not enough for him to file grievances and handle the rest of his legal filings (Doc. 140-1, p. 10). Plaintiff testified that while he did receive materials and copies from the law librarians, it was not enough for all of his filings (*Id*.). The record indicates that Plaintiff was given indigent supply packages—which included 2 9x13 legal envelopes, 4 legal envelopes, 25 sheets of paper and 2 ink pens—on 1/22/2013, 3/19/2013, 4/16/2013, 5/14/2013, 6/14/2013, 7/16/2013, 9/20/2013, 10/9/2013, 11/7/2013, 12/12/2013, 1/14/2014, 2/14/2014, 3/12/2014, 4/15/2014, 5/14/2015, 6/17/2014, 7/10/2014, 8/5/2014, 9/2/2014, 11/14/2014, 12/10/2014, 1/28/2015, 3/25/2015, 4/22/2015, and 5/20/2015 (Doc. 140-1, p. 25). Plaintiff was also allowed to request additional supplies from the library (*Id*.).

Plaintiff also alleged that he told Heidemann that he had a court deadline coming up and needed access to the law library, but he was denied access (Doc. 140-1, p.10.).

Plaintiff testified that he had filed a grievance two years before and the statute of limitations for filing suit on that claim was approaching but Heidemann did not consider that to be a court deadline (*Id.*). The law library also would not check his case law or allow him access to his legal materials at the time because he was in segregation (*Id.* at p. 11). Plaintiff admitted that while he was in segregation he was allowed one law library session, but said he did not have a pen during the time he was in segregation (*Id.*).

## LEGAL STANDARDS

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Marketing & Trade v. Multiut Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (***citing* FED. R. CIV. P. 56(a))**. A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**.

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, **477 U.S. at 250 (***quoting* FED. R. CIV. P. 56(e)(2))**. A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in

opposing the motion when it presents definite, competent evidence to rebut it. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, **231 F.3d 360, 364 (7th Cir. 2000).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).**

ANALYSIS

**A. Access to the Courts**

Prisoners are entitled to "meaningful" access to the courts. *Gentry v. Duckworth*, **65 F.3d 555, 558 (7th Cir. 1995).** A prisoner claiming denial of access to the courts must show actual injury. *Lewis v. Casey*, **518 U.S. 343, 352 (1996).** Specifically, on summary judgment, a prisoner must show detriment caused by the challenged conduct. *Howland v. Kilquist*, **833 F.2d 639, 642 (7th Cir. 1987).** In "backward-looking claims," where a plaintiff alleges that specific litigation ended poorly, the plaintiff must give defendants "fair notice" of the claim, including the specific underlying claim that was lost, a description of the official acts that frustrated the litigation, and the remedy that may be awarded as recompense, which must not be available in another potential suit. *Steidl v. Fermon*, **494 F.3d 623, 633 (7th Cir. 2007).**

Officials "potentially" violate an inmate's right to access the courts if they open legal mail (marked with an attorney's name and a warning that it is legal mail) outside of the inmate's presence. *Kaufman v. McCaughtry*, **419 F.3d 678, 686 (7th Cir. 2005).** Ongoing interference with legal mail violates a prisoner's rights. *Castillo v. Cook Co. Mail Room Dep't*, **990 F.2d 304, 306 (7th Cir. 1993).** But to succeed on an access-to-courts claim, a prisoner must show injury. Relief for the denial of access to courts "is intended to remedy rights denied in a separate case due to the impediment . . . . [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *In re Maxy*, **674 F.3d 658, 661 (7th Cir. 2012).** *See also Lehn v. Holmes*, **364 F.3d 862, 868 (7th Cir. 2004) (prisoner must show some "quantum of detriment" caused by the challenged conduct).**

### a. Legal Filing Fees

Plaintiff alleges that Defendants Wayne Robke and John Evans[3] denied him access to the courts when they failed to release funds from Plaintiff's account to pay for his litigation in state court. Plaintiff filed three cases in state court. In two of those, Plaintiff received *in forma pauperis* status, but in one case he did not (Doc. 144-1, p. 46, 34). However, in all three cases it appears that the state court refused to file Plaintiff's complaints until he paid his filing fee, either the partial filing fee in the cases where he had pauper status or the full filing fee in the case where he did not (*Id.*; Doc. 144-1, p. 49).

---

[3] The Court notes that Evans, although served, did not file an answer or a motion for summary judgment until after the other Defendants moved for summary judgment. The Court will address Evans' motion for summary judgment in a subsequent order.

Defendants did not pay the fees because Plaintiff did not have sufficient funds in his account to cover those expenses (Doc. 144, p. 11; Doc. 1-1, p. 23-24).

The right to access the courts is not unlimited—officials must provide inmates with "meaningful," but not unlimited, court access. *Lehn*, **364 F.3d at 866.** And there are no facts in the record to suggest that Defendants denied Plaintiff meaningful access to the courts. Plaintiff was able to file his claims and seek pauper status from the state courts. That he was either denied status outright or ordered to pay a partial filing fee, which he had no finances to cover and which prevented him from pursuing his case further, was not the fault of Defendants. Defendants did not prevent him from pursuing his case, rather the denial of his pauper status and inability to pay prevented Plaintiff from further pursuing his claims. While Plaintiff argues that Defendants should have paid the money even though his account was in the negative, Plaintiff points to no case law to support that position. He has shown no authority which requires the prison to pay for all of Plaintiff's litigation costs.

Nor is there any indication in the record that Plaintiff had an order from the state court requiring the prison to pay the fees for Plaintiff. Illinois law allows for a court to order a party to pay a plaintiff's litigation fees, but there is no evidence that such a court order was entered in Plaintiff's cases. *See* **735 ILL. COMP. STAT. 5/5-105(f) (indicating that a court may order another party to pay the fees associated with the case).** In fact, Hill Correctional Center informed Plaintiff that it could not forward the money for his filing fee because his account was in the negative and because it had no order from the

state court ordering Hill to pay the fees (Doc. 1-1, p. 21-23).   As Plaintiff admittedly did not have funds in his account, there was nothing for Defendants to forward to the state court and there was no court order requiring them to pay the fees for Plaintiff.   Thus, the Court finds that Defendants did not interfere with Plaintiff's court access by failing to pay his filing fees.   Defendant Robke is entitled to judgment on this claim.

### b. Legal Mail

Plaintiff also alleges that Defendants Robke and Evans interfered with his access to the courts by refusing to send his summons to the sheriff's department because he had no funds in his account.   The Illinois code defines mail to sheriff's departments as privileged mail.   *See* 20 ILL. ADMIN. CODE § 525.110(g)(8).   The Code also provides that inmates with insufficient money "shall be permitted to send reasonable amounts of legal mail and mail to clerks of any court . . . if they attach signed money vouchers authorizing deductions of future funds to cover the cost of the postage."   20 ILL. ADMIN. CODE § 525.130 (a).   Plaintiff argues that Defendants refused to allow the mail to be designated as legal mail and refused to send the mail out due to insufficient funds.

Although Plaintiff testified that the mail he was trying to send should have been considered legal mail and should have been sent despite his insufficient funds, the Court notes that the evidence Plaintiff himself submitted to the Court does not support Plaintiff's position that he was attempting to send legal mail to the sheriff's department. In fact, in the grievances Plaintiff points to, he alleges that Defendants failed to send out his mail to the defendants in his pending state case (Doc. 144, p. 19; 1-1, p. 13-14).

Plaintiff's grievance dated September 4, 2008 indicates that he received summons from the state court to send to the defendants in that case but Defendants in the mailroom returned the grievances as no legal mail (Doc. 144, p. 19).   Plaintiff has also included his legal postage vouchers which indicated he was attempting to send the summons to the defendants in the case and not to the sheriff's department (Doc. 144-2, p. 7, 14-15). There is no indication that Plaintiff was trying to send mail to the sheriff's department as Plaintiff's own documents indicate it was being sent to the defendants directly.

Further, there is no indication that Defendants refusal to send the letters for lack of funds interfered with Plaintiff's court access.   To succeed on an access-to-courts claim, a prisoner must show actual injury.   As the Court already said, relief for the denial of access to the courts "is intended to remedy rights denied in a separate case due to the impediment . . . .   [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."   *Maxy*, **674 F.3d at 661**. Here, Plaintiff testified that his cases were not even filed because he was unable to pay the filing fees.   As Plaintiff was unable to pay the filing fees, his cases were never on file with the state court (Doc. 144-1, p. 49 (Knox case would not be filed without fee)).   Thus, the refusal to send out the summons did not impede his access to courts.

Moreover, there is no indication that the courts would not send out summons if Plaintiff could not do so, had he properly asked.   Illinois law allows for special service by order of a court and waiver of service, **735 Ill. Comp. Stat. §§ 5/2-203.1 & 5/2-213**, and there is evidence that at least one court instructed Plaintiff that he could ask for

service by the Court on written request (Doc. 144-2, p. 17).   Thus, there is evidence that Plaintiff had other avenues from which he could pursue service and Defendants' failure to send the summons did not interfere with Plaintiff's access to the courts.   The Court will grant summary judgment as to this claim for Defendant Robke.

### c.  Access to Law Library, Excess Legal Box, and Supplies

#### 1.  *Grievance Officers and Wardens*

Plaintiff alleges that Defendants Mary Dolce, Linda Fritts, Mark Hartman, Robert Lutz, Tony Kittle, and Marc Hodge all denied him access to the courts because they were involved in the grievance process and failed to adequately address his grievances when he complained of his lack of access to the law library and his legal supplies.   However, the Court notes that simply rejecting a grievance does not create liability for a constitutional violation.  *George v. Smith*, **507 F.3d 605, 609 (7th Cir. 2007).**   Further, not every person who knows of a wrong "must do something to fix it."  *Burks v. Raemisch*, **555 F.3d 592, 596 (7th Cir. 2009).**   Here, Plaintiff takes issue with Defendants because they did not rule on his grievances the way he wanted them to.   They did not supply him with access to his materials or the law library after he complained that he was not getting access, but they are not required to fix Plaintiff's issues with his lack of access.   Further, there is no indication that they refused to provide him with access, only that they denied or did not respond to his grievances.   Accordingly, the Court finds these individuals are entitled to summary judgment on Plaintiff's access to courts claim.

### 2. Wayne Robke

In ruling on the previous motion to dismiss, the Court allowed a claim against Defendant Robke which alleged that he denied Plaintiff access to his legal boxes. However, in Plaintiff's deposition, he testified only that Robke oversaw the inmate trust fund accounts and that he refused to send payments to the courts (Doc. 140-1, p. 2, 3-4). Although Plaintiff alleges elsewhere in his deposition that others denied him access to his legal materials and boxes, he does not testify that Robke was one of those individuals, nor does he indicate in his responsive brief that Robke denied him access to his legal materials.   As such, the Court finds no evidence that Robke interfered with Plaintiff's access to the courts by denying Plaintiff access to his legal materials. Accordingly, the Court finds that Robke is entitled to summary judgment on this claim.

### 3. Law Librarians

Plaintiff also alleges that law librarians Donna Heidemann and Kathy Musgrave denied him access to the courts because they would not provide him with access to his legal boxes or provide him with adequate access to the law library.   Plaintiff testified in his deposition that Musgrave was the law librarian when his excess legal boxes were lost.   He alleges that he spoke to both librarians but they did not provide him with any additional time in the law library.   However, Plaintiff has not shown that his lack of adequate access or his missing legal boxes affected the outcome of his state cases.   As previously stated, his state cases were never filed because Plaintiff did not pay the filing fees.   Plaintiff has offered no evidence to indicate that his access to the law library and

his legal boxes had anything to do with the dismissal of his cases.

Plaintiff also alleges that Heidemann denied him court access because she would not allow him access to the law library to make copies of grievances to attach to his complaint.   Plaintiff testified that the two year deadline for filing a lawsuit was approaching and he wished to attach a copy of his grievance to the complaint, but Heidemann would not allow him to make a copy (Doc. 140-1, p. 10-11).   However, there is no indication that this impeded Plaintiff's state claim.   Plaintiff does not indicate what case he wished to attach these grievances to, nor does he indicate that he would not be able to proceed with the case without a copy of the grievance.   Further, there is no indication that Plaintiff needed a copy of the grievance to file his case.   He could have submitted the original grievance or not submitted the grievance at all.   There is no indication that the state court required the grievance to be attached as an exhibit or that the lack of grievance would have caused his case to be dismissed.   Accordingly, the Court will grant summary judgment as to Donna Heidemann and Kathy Musgrave.

### 4. *Dintleman*

As to Defendant Dintleman, Plaintiff alleges that he did not provide him with enough indigent supplies to prosecute his cases.   Plaintiff testified that Dintleman was the assistant warden at Pinckneyville and wrote a memo permitting indigent inmates only two envelopes, ten sheets of paper, and one pen per month (Doc. 140-1, p. 10).   Plaintiff testified that this was not enough to file grievances or to support his legal work (*Id.*).   However, Plaintiff has not shown that the amount of legal materials was not

enough or that he was prevented from prosecuting any of his cases because of a lack of materials.   Plaintiff filed several lawsuits, none of which were dismissed for a lack of filing of any written materials, and the record indicates that Plaintiff filed numerous grievances (Doc. 144, 144-1, and 144-2).   There is no indication that the materials he received were inadequate or that it interfered with his access to the courts.   Thus, the Court will grant summary judgment in favor of Dintleman as to this claim.

### B. Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights.   *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).   Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two.   *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).   Even if those elements are satisfied, a defendant can still prevail if he shows that the offending action would have happened even if there had been no retaliatory motive; in other words, if the harm would have occurred no matter what.   *Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011).   At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his burden.   *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 544 F.3d 752, 757 (7th Cir. 2008).

Here, Plaintiff has not shown that there was a causal connection between

Plaintiff's protected activity and the refusal to send his subpoenas to the sheriff's department for service.   Plaintiff alleges that he filed grievances and cases in state court, and because of those filings Defendants retaliated against him by failing to send out his subpoenas to the sheriff's office.   However, there is no evidence that Defendants refused to send the subpoenas out of retaliation.   Instead, the evidence indicates that Defendants refused to send the subpoenas because Plaintiff lacked sufficient funds and his subpoenas directed to the sheriff's office were not considered legal mail to be sent without prepayment of postage.   *See* **20 ILL. ADMIN. CODE § 525.130(a).**   There is no evidence that Defendants sought to prevent the mailing of the subpoenas out of retaliation.   Thus, Defendants are also entitled to summary judgment on this claim.

## C. Conspiracy

Plaintiff also alleges that the Defendants conspired to deprive him of his access to the courts.   To establish a conspiracy claim under § 1983, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement."   *Scherer v. Balkema*, **840 F.2d 437, 442 (7th Cir. 1988).** Plaintiff argues that he has shown a conspiracy because the Defendants were following 20 Illinois Administrative Code § 525.110(h) and § 525.130(a) in refusing to mail his letters to the sheriff's department due to insufficient funds.   However, in order to prove a conspiracy claim, he must show an agreement among the parties.   Simply following an administrative code does not show an agreement among the individuals; it merely

shows that they were all following the same law for the sending of mail.   Plaintiff has offered no facts to show that the Defendants entered into an agreement with each other to deprive Plaintiff of his constitutional rights or that they all agreed to refuse to send out Plaintiff's mail as part of that conspiracy.   Thus, the Court finds no evidence to support Plaintiff's conspiracy claim, and summary judgment must be granted as to that claim.

### D.  Unconstitutionality of Illinois Administrative Code

Plaintiff's complaint also alleges that 20 Illinois Administrative Code §§ 525.130(a) and 110(h) operate to block his court access rights**.**   Those provisions of the code establish that privileged letters must be sent at an inmate's expense but allow inmates with insufficient funds to purchase postage for reasonable amounts of legal mail by signing over future funds.   **20 ILL. ADMIN. CODE § 525.130(a)**.   Section 110(h) defines legal mail as mail to attorneys, Illinois attorney generals, judges, and organizations that provide legal representation.   Plaintiff's theory is that these statutes violate his access-to-court rights because they do not include mail to sheriff's departments as legal mail, which prevented Plaintiff from sending his summons to the sheriffs here.

Because Plaintiff's theory of unconstitutionality is tied to his access to court rights, his claim must fail.   As the Court already indicated, the way these statutes interacted did not block Plaintiff's access to courts—the underlying cases were dismissed because Plaintiff failed to pay the filing fees, and either way there were several avenues through which Plaintiff could have submitted the summons, including asking for court ordered service, **735 ILL. COMP. STAT. § 5/2-203.1**, or obtaining waivers, **735 ILL. COMP. STAT. §**

5/2-213.   In the end, Plaintiff has presented no evidence that the codes stopped him from accessing the courts, so the Court must grant judgment in favor of Defendants.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants Davis, Dintleman, Dolce, Fritts, Hartman, Heidemann, Hodges, Kittle, Lutz, Musgrave, Paulmeyer, and Robke's motion for summary judgment (Doc. 139).   Summary judgment is entered in favor of these parties and against Plaintiff.   In addition, the Court notes that a suggestion of death was entered on the record as to William Harris on September 9, 2014 (Doc. 107).   Plaintiff never made a request to substitute another party for Harris and the ninety day deadline for making such a substitution has long since passed.   Accordingly, the Court **DISMISSES** Defendant Harris without prejudice.

The only claims which remain in the case are Plaintiff's causes of action against Defendant Evans.   Evans has recently moved for summary judgment, and the Court will address that motion in a separate order in due course.

**IT IS SO ORDERED.**

**DATED:   February 16, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**