IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES OWENS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No.   13-cv-594-MJR-SCW |
| | ) |
| | ) |
| **JOHN EVANS,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James Owens is currently incarcerated at Lawrence Correctional Center. Pursuant to 42 U.S.C. § 1983, he has sued several individuals for violation of his right to access the courts, for retaliation, and for conspiracy.  Specifically, Plaintiff alleged that various defendants violated his right to access the courts by giving him limited or no access to his legal boxes, giving him limited access to the law library and legal supplies, and interfering with his state court cases.  Plaintiff also alleged that these actions were done in retaliation and as a conspiracy against him.  Plaintiff also challenges the constitutionality of two parts of the Illinois code, which he says block him from sending certain mail to sheriff's departments without advance funds in his prison account.

This matter is before the Court on a motion for summary judgment filed by Defendant Evans (Doc. 158) on Plaintiff's claims against him, which concern the payment of filing fees and the transmission of summons in his state court cases.   For the following reasons, the Court **GRANTS** Evans' motion for summary judgment.

## BACKGROUND

Plaintiff filed his complaint on June 21, 2013, alleging that Defendants violated his right to court access, as well as retaliated and conspired against Plaintiff in denying him court access. Plaintiff also challenged the constitutionality of **20 Ill. Admin. Code § 525.110(h) and 525.130(a)**—he claims that these statutes do not allow him to send certain mail on a credit basis to sheriff's departments, thereby violating his due process rights. As narrowed by the Court's threshold order, Plaintiff's complaint alleges that officials violated his rights by depriving him of access to his legal boxes, the law library, legal supplies, and by interfering with his state cases. The complaint also alleged that these actions were taken out of retaliation and in a conspiracy against Plaintiff.

Plaintiff's complaint named a number of Department of Corrections officials, several employees of various Illinois prisons, and the Illinois Department of Corrections itself. The Department and many of the Department's officials were dismissed from the case in the Court's threshold order (Doc. 10), and the grant of a subsequent motion to dismiss took a number of other officials out of the case, too (Doc. 108). Those rulings left only Plaintiff's claims against several employees of Hill, Big Muddy, Pinckneyville, and Lawrence prisons remaining in the case. On February 16, 2016, the Court granted summary judgment in favor of all but one of those defendants; the remaining defendant—John Evans—had yet to move for summary judgment (Doc. 162). John Evans, the former warden of Big Muddy, has since moved for summary judgment as to Plaintiff's claims against him, which concern the payment of filing fees and the

transmission of summons in Plaintiff's state court cases. Plaintiff has responded, and the motion for summary judgment is now before the Court for review.

The allegations relevant to Evans' motion for summary judgment concern events that started at Hill Correctional Center and continued during Plaintiff's tenure at Big Muddy Correctional Center. While he was at Hill, Plaintiff claimed that the prison refused to send payments to the state court for Plaintiff and refused to distribute money so that Plaintiff could send his complaint to the sheriff's department for service on defendants in his state case (Doc. 140-1, p. 2). Plaintiff was informed by the state court that he would have to serve the summons by sending the summons to the sheriff's department (*Id.*). Plaintiff filled out the money voucher for the summons and claims that he attempted to send them to the sheriff's department, but they were sent back to him with a note stating that the items were not legal mail and would not be sent (*Id.*). Plaintiff claims that he had no other way of serving the summons (*Id.*). The state court complaint was ultimately dismissed for lack of prosecution (Doc. 140-1, p. 4).

Plaintiff also claims that he was denied court access because Hill would not pay his filing fees. Plaintiff testified that he filed a motion for injunctive relief in Sangamon County on June 10, 2008, and he was denied pauper status and ordered to pay $193 in filing fees (Doc. 140-1, p. 6, 7; Doc. 144-1, p. 17-26, 33-34). Although Plaintiff sent a voucher for the fee to be taken out of his trust account, he was refused because he had no money in his account (Doc. 140-1, p. 6, 7). In fact, Defendants point out that Plaintiff's funds in his account were -$1803.06 as of May 27, 2015 (Doc. 140-1, p. 7; 140-1, p. 15-20).

Plaintiff had numerous funds going out of his account for library fees, legal postage, and copies, leaving his account in the negative (*Id.*). Sangamon County refused to file his case without the filing fee and since Plaintiff was denied the funds from his account, Plaintiff believes he was denied access to the courts (Doc. 140-1, p. 6). The Department of Corrections refused to advance Plaintiff any money for the filing fees (*Id.*).

Plaintiff filed another case in Knox County, this one involving a motion for injunctive relief to force the Department of Corrections to submit his summons to the sheriff's office (Doc. 140-1, p. 7; 144-1, p. 39-45).[1] He was granted *in forma pauperis* status in that case and assessed an initial filing fee of $4.23 (Doc. 140-1, p. 7; 144-1, p. 47).[2] Again, Plaintiff requested that the money be taken from his trust fund account and he was told that he had insufficient funds and the mail room told him that the funds would not be paid (Doc. 140-1, p. 7). Plaintiff also claims that he asked the clerk's office to send the summons to the sheriff's department for him and he was informed that it was his responsibility to serve the summons (*Id.*). Plaintiff testified that he received a state stipend of $10.00 every month but those funds were deducted from his pending overage in his trust fund account and would not go towards his filing fees (*Id.* at p. 8).

While at Big Muddy, Plaintiff testified that he had the same problem with a case

---

[1] The complaint for injunctive relief that Plaintiff sent to Knox County is attached to his responsive brief (Doc. 144-1). The Complaint indicates that Plaintiff was trying to send mail related to a § 1983 case to individual defendants and the Department of Corrections refused to send the mail as the defendants did not fall under the definition of legal mail.

[2] The order from Knox County indicates that the case would not be filed until Plaintiff paid an initial filing fee of $4.78 (Doc. 144-1, p. 46).

he filed in Jefferson County (Doc. 140-1, p. 8). He was granted pauper status with Jefferson County but the clerk's office refused to send the summons to the sheriff's department, instead telling Plaintiff that it was his responsibility. Plaintiff informed the clerk's office of the rule which prevented mail to the sheriff's department from being labeled legal mail, but the County never ruled on his motion (*Id*. at p. 8). Plaintiff tried to appeal but was directed to pay $60.00 in fees; he did not have the money and Big Muddy would not advance it, so the state appeal went nowhere (*Id*.).

## LEGAL STANDARDS

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Marketing & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011)** (*citing* **FED. R. CIV. P. 56(a))**. A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, **477 U.S. at 250** (*quoting* **FED. R. CIV. P. 56(e)(2)).** A mere scintilla of evidence

in support of the nonmovant's petition is insufficient; a party will be successful in opposing the motion when it presents definite, competent evidence to rebut the motion. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, **231 F.3d 360, 364 (7th Cir. 2000).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).**

ANALYSIS

### A. Access to the Courts

Prisoners are entitled to "meaningful" access to the courts. *Gentry v. Duckworth*, **65 F.3d 555, 558 (7th Cir. 1995).** A prisoner claiming denial of access to the courts must show actual injury. *Lewis v. Casey*, **518 U.S. 343, 352 (1996).** Specifically, on summary judgment, a prisoner must show detriment caused by the challenged conduct. *Howland v. Kilquist*, **833 F.2d 639, 642 (7th Cir. 1987).** In "backward-looking claims," where a plaintiff alleges that specific litigation ended poorly, the plaintiff must give defendants "fair notice" of the claim, including the specific underlying claim that was lost, a description of the official acts that frustrated the litigation, and the remedy that may be awarded as recompense, which must not be available in another potential

suit. *Steidl v. Fermon*, **494 F.3d 623, 633 (7th Cir. 2007).**

Officials "potentially" violate an inmate's right to access the courts if they open legal mail (marked with an attorney's name and a warning that it is legal mail) outside of the inmate's presence. *Kaufman v. McCaughtry*, **419 F.3d 678, 686 (7th Cir. 2005).** Ongoing interference with legal mail violates a prisoner's rights. *Castillo v. Cook Co. Mail Room Dep't*, **990 F.2d 304, 306 (7th Cir. 1993).** But to succeed on an access-to-courts claim, a prisoner must also show injury. Relief for the denial of access to courts "is intended to remedy rights denied in a separate case due to the impediment . . . . [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *In re Maxy*, **674 F.3d 658, 661 (7th Cir. 2012).** *See also Lehn v. Holmes*, **364 F.3d 862, 868 (7th Cir. 2004) (prisoner must show some "quantum of detriment" caused by the challenged conduct).**

### a. Legal Filing Fees

Plaintiff alleges that Defendant Evans denied him access to the courts when he failed to release funds from Plaintiff's account to pay for the charges in Plaintiff's state court cases. Plaintiff filed three total cases in state court. In two of those, Plaintiff received *in forma pauperis* status, but in one case he did not (Doc. 144-1, p. 46, 34). However, in all three cases it appears that the state court refused to file Plaintiff's complaints until he paid his filing fee, either the partial filing fee in the cases where he had pauper status or the full filing fee in the other case (*Id.*; Doc. 144-1, p. 49). Defendant Evans did not pay the funds because Plaintiff did not have sufficient funds in

his account to cover those expenses (Doc. 144, p. 11; Doc. 1-1, p. 23-24).

The right to access the courts is not unlimited—officials must provide inmates with "meaningful," but not unlimited, court access. ***Lehn v. Holmes*, 364 F.3d 862, 866 (7th Cir. 2004).** And there are no facts in the record to suggest that Defendant denied Plaintiff meaningful access to the courts. Plaintiff was able to file his claims and seek pauper status from the state courts. That he was either denied status outright or ordered to pay a partial filing fee, which he had no finances to cover and which prevented him from pursuing his claims further, was not the fault of Defendant Evans. Defendant did not prevent him from pursuing his claims; rather, the denial of his pauper status and inability to pay prevented Plaintiff from further pursuing his claims. While Plaintiff argues that Defendant Evans should have paid the money even though his account was in the negative, Plaintiff points to no case law to support this position. He has shown no authority which requires the prison to pay for Plaintiff's litigation costs.

Nor is there any indication in the record that Plaintiff had an order from the state court requiring the prison to pay the fees for Plaintiff. Illinois law allows for a court to order a party to pay a plaintiff's litigation fees, but there is no evidence that such a court order was entered in Plaintiff's cases. ***See* 735 ILCS 5/5-105(f) (the statute setting forth the requirements for *in forma pauperis* specifically indicates that a court may order another party to pay the fees associated with the case).** And Plaintiff admittedly did not have funds in his account. Thus, there was nothing for Evans to forward to the state court and there was no order requiring him to pay the fees for Plaintiff. Accordingly,

the Court finds that Defendant Evans did not interfere with Plaintiff's court access by failing to pay his filing fees and is entitled to summary judgment on this claim.

### b. Legal Mail

Plaintiff also alleges that Defendant Evans interfered with his access to the courts by refusing to send his summons to the sheriff's department because he had no funds in his account. The Illinois Administrative Code defines mail to sheriff's departments as privileged mail. *See* **20 Ill. Admin. Code § 525.110(g)(8).** The Code also provides that inmates with insufficient money "shall be permitted to send reasonable amounts of legal mail and mail to clerks of any court . . . if they attach signed money vouchers authorizing deductions of future funds to cover the cost of the postage." **20 Ill. Admin. Code § 525.130(a).** Plaintiff argues that Defendant Evans refused to allow the mail to be designated as legal mail and refused to send the mail out due to insufficient funds.

Although Plaintiff testified that the mail he was trying to send should have been considered legal mail and should have been sent to the sheriff despite his insufficient funds, the Court notes that the evidence Plaintiff himself submitted to the Court does not support Plaintiff's position that he was attempting to send legal mail to the sheriff's department. In fact, in the grievances Plaintiff points to, he alleges that Defendants failed to send out his mail to the defendants in his pending state case (Doc. 144, p. 19; 1-1, p. 13-14). Plaintiff's grievance dated September 4, 2008 indicates that he received summons from the state court to send to the defendants in that case but that Defendants in the mailroom returned the grievances as not legal mail (Doc. 144, p. 19). Plaintiff has

also included his postage vouchers which indicate he was attempting to send the summons to the defendants in the case and not to the sheriff (Doc. 144-2, p. 7, 14-15). There is no indication that Plaintiff was trying to send mail to the sheriff as Plaintiff's own documents indicate it was being sent to the defendants in his case directly.

Further, there is no indication that Defendants' refusal to send the letters for lack of funds interfered with Plaintiff's access. To succeed on an access-to-courts claim, a prisoner must also show actual injury. As the Court already said, relief for the denial of access to the courts "is intended to remedy rights denied in a separate case due to the impediment . . . . [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Maxy*, **674 F.3d at 661**. Here, Plaintiff testified that his cases were not even filed because he was unable to pay the filing fees. As Plaintiff was unable to pay the required fees, his cases were never on file with the state court (Doc. 144-1, p. 49 (Knox County case would not be filed without fee)). Thus, the refusal to send out the summons did not impede his access to courts.

There is also no indication that the courts would not send out summons if Plaintiff could not do so, had he actually asked. Illinois law allows for special service by order of a court and waiver of service, **735 ILL. COMP. STAT. §§ 5/2-203.1 & 5/2-213**, and there is evidence that at least one court instructed Plaintiff that he could ask for service by the Court on written request (Doc. 144-2, p. 17). Thus, there is evidence that Plaintiff had other avenues from which he could pursue service and Defendants' failure to send the summons did not interfere with Plaintiff's access to the courts. The Court

will grant summary judgment as to this claim as well.

### B. Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000).** Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *Watkins v. Kasper*, **599 F.3d 791, 794 (7th Cir. 2010);** *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).** Even if those elements are satisfied, a defendant can still prevail if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. the harm would have occurred anyway. *Mays v. Springborn*, **719 F.3d 631, 634-35 (7th Cir. 2013);** *Greene v. Doruff*, **660 F.3d 975, 977-80 (7th Cir. 2011).** At summary judgment, "mere speculation or conjecture" by the plaintiff is insufficient to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, **544 F.3d 752, 757 (7th Cir. 2008).**

Here Plaintiff has not shown that there was a causal connection between Plaintiff's protected activity and the refusal to send his subpoenas to the sheriff's department for service. Plaintiff alleges that he filed grievances and cases in state court and because of those filings Defendant Evans and others retaliated against him by failing to send out his subpoenas to the sheriff's office. However, there is no evidence that Evans refused to send the subpoenas out of retaliation. Instead, the evidence indicates

that Evans refused to send the subpoenas because Plaintiff lacked sufficient funds and his subpoenas directed to the sheriff's office were not considered legal mail to be sent without prepayment of postage. *See* **20 ILL. ADMIN. CODE § 525.130(a).** There is no evidence that Defendant sought to prevent the mailing of the subpoenas out of retaliation. Thus, Defendant Evans is entitled to summary judgment on this claim.

### C. Conspiracy

Plaintiff also alleges that the Defendants, including Evans, conspired to deprive him of court access. To establish a conspiracy claim under § 1983, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, **840 F.2d 437, 442 (7th Cir. 1988).** Plaintiff argues that he has shown a conspiracy claim because the Defendants were following 20 Ill. Admin. Code § 525.110(h) and § 525.130(a) in refusing to mail his letters to the sheriff's department due to insufficient funds. However, in order to prove a conspiracy claim, he must show an agreement among the parties. Simply following an administrative code does not show an agreement among the individuals, it merely shows that they were all following the same rules for the sending of mail. Plaintiff has offered no facts to show that the Defendants entered into an agreement with each other to deprive Plaintiff of his constitutional rights or that they all agreed to refuse to send out Plaintiff's mail as part of that conspiracy. Thus, the Court finds no evidence to support Plaintiff's conspiracy claim, and summary judgment must be granted as to that claim.

### D. Unconstitutionality of Illinois Administrative Code

Plaintiff's complaint also alleges that 20 Ill. Admin. Code §§ 525.130(a) and 110(h) operate to block his court access rights. Those provisions of the code establish that privileged letters must be sent at an inmate's expense but allow inmates with insufficient funds to purchase postage for reasonable amounts of legal mail by signing over future funds to cover costs. **20 ILL. ADMIN. CODE § 525.130(a)**. Section 110(h) defines legal mail as mail to attorneys, Illinois attorney generals, judges, and organizations that provide legal representation. Plaintiff's theory is that these statutes violate his access-to-court rights because they do not include mail to sheriff's departments as legal mail, which prevented Plaintiff from sending his summons to the sheriffs for service.

Because Plaintiff's theory of unconstitutionality is tied to his access to court rights, his claim must fail. As the Court already indicated, the way these statutes interacted did not block Plaintiff's access to courts—the underlying cases were dismissed because Plaintiff failed to pay the filing fees, and either way there were several avenues through which Plaintiff could have submitted the summons, including asking for court ordered service, **735 ILL. COMP. STAT. § 5/2-203.1**, or obtaining waivers, **735 ILL. COMP. STAT. § 5/2-213.** In the end, Plaintiff has presented no evidence that the codes stopped him from accessing the courts, so the Court must grant judgment in favor of Evans.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** summary judgment in favor of Evans and against Plaintiff. Evans has moved for a continuance to the upcoming trial

setting, and given the grant of this motion, that motion for a continuance (Doc. 163) is

**DENIED** as **MOOT**. There are no further claims pending in this case, so the **CLERK** is

**DIRECTED** to enter judgment in favor of Defendants and against Plaintiff.

    IT IS SO ORDERED.

    DATED: March 2, 2016

                                            /s/ **Michael J. Reagan**
                                            **Chief Judge Michael J. Reagan**
                                            **United States District Court**